LOUISIANA, The (HANEY v.). See Case No. 6,020.

LOUISIANA, The (MENDELSOHN v.). See Case No. 9,421.

LOUISIANA (NORTHWESTERN UNION PACKET CO. v.). See Case No. 10,344.

LOUISIANA v. U. S. See Case No. 3,097.

LOUISIANA (WOOD v.). See Case No. 17,-948.

## Case No. 8,539.

LOUISIANA INS. CO. v. NICKERSON.

[2 Lowell, 310.] 1

District Court, D. Massachusetts. March, 1874.

PRACTICE IN ADMIRALTY — ARREST FOR DEBT — STATE LAWS — STIPULATION WHEN NOT LIABLE TO ARREST — GARNISHMENT OF CREDITS — RULE OF COURT.

1. The statute of 2d March, 1867 (14 Stat. 543), makes arrests for debt, whether on mesne process or execution, depend upon the laws for similar arrests in the states respectively, and applies to admiralty proceedings.
[Cited in The Hudson, 15 Fed. 176.]

2. This court will not order a defendant to give a stipulation to the action, under pain of imprisonment, in a case in which he is not liable to arrest.

3. By a rule of this court, passed in 1855, a warrant to attach the goods and chattels, or, in default thereof, the credits, of the defendant, may be granted in cases in which an arrest cannot legally be made.
[Cited in The Bremena v. Card, 38 Fed. 147.]

1 [Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission.]

4. It is within the power of the court to make such a rule.

In admiralty.

R. H. Dana, Jr., for libellant.

F. W. Hurd and O. W. Holmes, Jr., for respondents.

LOWELL, District Judge. The admiralty rules of 1845, adopted and established a simple system, like that then in use in some of the districts, by which the plaintiff in a personal action in the admiralty could always obtain security for his debt or damages when the defendant was able to give it; because he could arrest the person of the defendant, or, if he could not be found, his goods and chattels, or failing these his credits, to the amount sued for, and the person or property thus attached was held to answer the suit, unless the defendant should give bail to the action; that is to say, not only to abide the orders of the court, but to pay the debt. Rules 2. 3, and 4. This practice has many features of resemblance to that obtaining in actions at common law in the United States, excepting that it retains from the ancient times of prohibitory legislation the inability to attach land or any interest therein by process out of the admiralty. It differs too from that with which we are familiar in New England, in not permitting an attachment in all cases, whether the defendant can be found or not. Out of this restricted right of attachment grows the present application to obtain a stipulation by order of the court, which could not be required under any of the forms of process expressly mentioned in the admiralty rules, because the defendant was found in the district and was personally served with the monition, and was not liable to arrest under the statute of March 2, 1867 (14 Stat. 543), which, as both parties admit, has adopted the limitations of the state practice in the matter of arrest for debt, in the admiralty courts as well as in others.

The argument in support of the motion, if I understand it, is that the ordinary process in admiralty, in personal actions, whatever may be its form, is intended to enforce the appearance of the defendant; and that, when he has appeared, he is to stipulate for debt and costs before being permitted to answer. The ancient authorities cited by counsel seem to bear out the argument, considered purely as an historical one; and there are remarks of Mr. Justice Johnson, in the leading case of Manro v. Almeida, 10 Wheat. [23 U. S.] 473, to a like effect. But the decision in that case virtually was that the effects attached might be held to satisfy the decree in the case of an absent defendant. Clarke v. New Jersey Nav. Co. [Case No. 2,859]. It has long since ceased to be the practice of the courts of the United States, to consider an attachment of property as intended merely to secure an appearance, or that a defendant is bound to give security, unless to release his person or property from arrest. The simple and reasonable American practice was that the plaintiff might secure himself by arresting the body of the defendant, or in some cases by attaching his property, and those he would hold to respond to the judgment or decree, and it was a privilege of the defendant to relieve his person or his estate by giving security, if he were able and willing to do so; or, finally, the defendant might be merely summoned to appear and answer. This, as we have seen, was the system sanctioned by the rules of 1845; but it did not originate with them. The practice of the First and Second circuits—which at that time, before admiralty jurisdiction had spread to the lakes, had a great part of the business of the whole country—was substantially similar to this. And in fact the courts of common law and admiralty did not differ greatly in this matter, though in equity attachment of the person was and is still used to enforce an answer when discovery of facts within the personal knowledge of the defendant is needed. No doubt there may be similar process in the admiralty for a like purpose. When the defendant was once before the court, whether by summons, citation, or however otherwise, he was not required to plead, unless he chose, but might suffer default. and the matter of the suit or plaint or libel or bill would be decreed against him.

This general course of practice has had its simplicity much marred by the statutes abolishing and limiting arrest of the person. Judge Ware, in one of his most learned opinions, decided, in 1835, that, in actions for damage, the usual condition of the bond or stipulation of a defendant who was found within the district was and should be to appear and abide the decree; a condition which would be satisfied by his surrender, and that he was not bound to stipulate to the action. Lane v. Townsend [Case No. 8,054]. The rules of 1845, as we have seen. authorized the marshal to take bail for the debt, and not merely to appear and abide. It is the opinion of a learned writer that this rule is permissive only, and that the marshal would be justified in taking bail for the defendant's appearance; though. when the defendant had appeared, he supposes the court would require him to give bail to the action, unless he could prove his inability to find sureties, in which case he would be excused from all but the bond to abide. Conk. Adm. Prac. (2d Ed.) 90, 91. In 1850, the supreme court passed rule 48, which provides among other things that, when a warrant of arrest is executed, the marshal and the court shall take bail only in those cases in which it is required by the laws of the state where an arrest is made upon similar or analogous process from the state courts. Following that, Judge Sprague, in November, 1855, promulgated a rule for this district, authorizing the marshal to strike out from the bond mentioned in admiralty rule 3, the words: "to

pay the money awarded by the court to which the suit is returnable, or in any appellate court," and insert in their stead: "and not depart without license." Then came the law of 1867, putting the arrest for debt, whether on mesne process or execution, in all courts of the United States on the footing of similar arrests in the state courts of the respective districts, which has always been treated as applying to admiralty proceedings, and was so treated by the plaintiff when he took out and executed his citation without arrest.

The plaintiff now asks me to order security under pain of imprisonment. Such an order would amount to a revival of imprisonment for debt in a more oppressive form than that which was abolished; for it would be the substitution of a mere order on motion for the old warrant of arrest, which had its regular order and incidents, and well-settled course of procedure. In all essentials its effect and purpose would be exactly similar. Motion denied.

After this motion was denied, it was discovered that Judge Sprague, in 1855, had made a rule that, whenever the defendant in a personal action cannot be lawfully arrested, the process may be a warrant to attach his goods and chattels to the amount sued for, or, if such property cannot be found, his credits and effects in the hands of the garnishees named therein. The libellants thereupon moved for such a warrant, and the motion was spoken to by the same counsel, on the question whether the rule was ultra vires.

LOWELL, District Judge. The power of this court to make a rule concerning process is denied. The supreme court have undoubted power to regulate the whole matter by the statute of 23d August, 1842, § 6 (5 Stat. 518); but this court has an equally undoubted power under the act of 8th May, 1792, § 2 (1 Stat. 276), unless the rule is either inconsistent with some action of the supreme court, or that court have avowedly covered the whole ground in any particular instance. The forty-sixth admiralty rule recognizes this power, but does not create it.

So in bankruptcy the supreme court have full power over the matter of practice and forms and modes of proceeding; and there is no reservation in the statute of any power to the district or circuit courts, and I have seen a dictum of one district judge that those courts could make no rules in bankruptcy. But every circuit and district court, excepting perhaps that of the learned judge in question, has made such rules, and it is perfectly well understood that the power is derived either from the inherent authority of the courts, or from the act of 1792, above cited; or at all events that it exists. The only question therefore is whether the supreme court, by giving authority to begin all personal ac-

tions by a warrant to arrest, or an alternative to attach goods, &c., if the defendant cannot be found, intended to say that in cases where arrest was illegal, and so the defendant could not be found for any useful purpose of arrest, there should be no attachment. I think not. If this be the law, there is now no mode of obtaining security in a personal action, unless the debtor is not found. This may be in accordance with the law of some of the states, but it has never been so in New England. Such a construction would leave the case of a corporation defendant unprovided for in any event; for such a person can never be arrested. Before the rule was passed, Judge Sprague had authorized a warrant of attachment to issue against a domestic insurance company. Pettingill v. Gloucester Mutual Fishing Ins. Co., Records, vol. 38, p. 800. Such an attachment appears to have been issued in Atkins v. Fibre Disintegrating Co. [Case No. 602]; and no objection was taken on the point now under consideration,[2] though the warrant did not come within the letter of the rule of the supreme court, and indeed, as I have said, is open to the same criticism as is made now upon Judge Sprague's rule.

Supposing, however, which I do not, that the rule of the supreme court covered the whole ground in 1845, congress has since passed a law which necessarily destroys the uniformity of practice, because it adopts the different laws of the various states on the subject of arrest; and thereby ex necessitate repeals so much of the rule of the supreme court as authorizes such arrest in all cases, and this seems to me to throw upon the district courts the right to adapt their processes anew to the changed practice, until the supreme court shall take some further order in the premises. Second motion granted.

---

2 The supreme court has since upheld the attachment in that case. 18 Wall. [85 U. S.] 272.

